**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| GARY L. CAIN JR. | : | |
| | : | |
| Appellant | : | No. 1200 MDA 2018 |

Appeal from the Judgment of Sentence Entered February 8, 2018
In the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0000280-2017

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:                 **FILED OCTOBER 25, 2019**

Appellant, Gary L. Cain Jr., appeals from the judgment of sentence entered in the Centre County Court of Common Pleas, following his jury trial convictions for one count each of rape, statutory sexual assault, involuntary deviate sexual intercourse ("IDSI") with a person less than 16 years old, attempted IDSI with a person less than 16 years old, sexual assault, and corruption of minors ("COM"), two counts of indecent assault, and sixteen counts of unlawful contact with a minor.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On March 17, 2017, the Commonwealth charged Appellant with 158 counts of various sex offenses in relation to sexual assaults Appellant committed on

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1); 3122.1; 3123(a)(7); 901 (section 3123(a)(7) related); 3124.1; 6301(a)(1)(ii); 3126(a)(1), (8); 6318(a)(1), respectively.

Victim between January 1, 2007 and June 30, 2016, beginning when Victim

was 12 years old. Victim was acquainted with Appellant because he was a

neighbor, and Appellant and his family lived with Victim for a short time after

Appellant's house was damaged by fire. Specifically, the affidavit of probable

cause alleged, *inter alia*:

> The following are [V]ictim's [recollections] of the assaults. It is believed Probable Cause exists to indicate that [Appellant] had anally raped [Victim] on (13) different occasions, once while she was less than 13 [years old]. He had also attempted to have sex with her on another occasion and indecently assaulted her on a separate one.
>
> - At a time period when [Appellant] was rebuilding his house in Unionville ([h]is original house burnt down in Dec 2012) he put [V]ictim's head between his legs while both were clothed. Only inappropriate touching occurred. Victim believed to be 12 [years old] at [the] time.
>
> - On another occasion while [Appellant] was rebuilding his house, he was sitting on a chair with [Victim] in the living room and performed anal sex on her against her wishes. She was believed to be 12 [years old] at the time.
>
> - When [Victim] lived beside [Appellant] in Unionville, he had her come into his bedroom and performed anal sex on her against her wishes. She was believed to be 13 [years old] at the time.
>
> - When at [Victim's] house in Unionville, [Appellant] had anal sex with her while he and his family were staying with them until he could move into his rebuilt house ([f]rom Dec 2012-Jan 2013). She would have been 13 [years old] at the time.
>
> - When [Victim] was over at [Appellant's] house after the rebuild, [Appellant] forced anal sex with her in his daughter's bedroom when no one else was home. She would have been 13 [years old].

- At [Appellant's] residence in the bathroom after the rebuild. His other family members were busy at the time with company. He performed anal sex with her. [Victim] would have been 13 years old at [the] time.

- At [Appellant's] house after the rebuild in his living room on the couch. It was just her and [Appellant] present at [the] time. He took off his pants and had her get [on top] of him and began "humping" her with clothes on before someone came to the residence door. [Victim] would have been 13 [years old].

- At [Victim's] house [in Milesburg] in her bedroom. [Victim's] mother and sisters were there. He forced her to have anal sex with her. She would have been 14 [years old] at this time.

- In [Appellant's] truck when [Victim] lived…in Milesburg. [Appellant] drove his truck back somewhere away from houses not far from where she was living. He parked it and performed anal sex on her. She was 14 [years old] at this time.

- At the Howard Dam at [the] time when [Victim] was still living [in Milesburg]. [Appellant's wife] had picked her up and taken her there. The three of them were there when [Appellant] sent [his wife] to get something in the car. [Appellant] then forced her to have anal sex. She was 14 [years old] at the time.

- Two occasions in the woods when [Victim] was living [in Milesburg]. [Victim] was going to her [grandmother's] house in Unionville when [Appellant] asked her to go back in the woods with him. He performed sex on her from the front and she believed she was bleeding. He still made her have anal sex with him. She stated that her "butt" and front hurt after the incident(s).

- There was an incident in the weeds by [Victim's grandmother's] house in Unionville. [Victim] was living [in Milesburg]. [Appellant] forced her to have anal sex with him. She would have been 14 [years old] at the time.

- At a hotel on Benner Pike in Bellefonte. Believed it was

- 3 -

Econolodge. [Victim] lived in Bellefonte at the time and [Appellant] picked her up under the premise that he was going to get tires on his truck. He rented a room for a few hours and had anal sex with her. She was 16 [years old] at the time.

- At the Kepler Pool parking lot when [Victim] was living in Bellefonte. He forced her to have anal sex with him. She would have been 16 [years old] at the time.

All of the aforementioned incidents happened against [V]ictim's wishes.

(Affidavit of Probable Cause, dated February 10, 2017, at 1-2).

On November 3, 2017, the Commonwealth filed a motion *in limine* for introduction of evidence of prior bad acts, pursuant to Pa.R.E. 404(b). Specifically, the Commonwealth sought to introduce the following evidence: **(1)** in July of 1994, Appellant lured 13-year-old E.S. into his car in the middle of the night under false pretenses; Appellant drove E.S. to a secluded parking lot and forcibly raped her; Appellant told E.S. not to tell anyone; **(2)** on July 25, 2000, Appellant pled guilty to six counts of statutory sexual assault and one count each of COM and aggravated indecent assault, in connection with Appellant's sexual assaults on J.D.; Appellant had sex with J.D. six times between September 11, 1999 and November 20, 1999; J.D. was 13 years old at the time; the court sentenced Appellant on April 25, 2001, to an aggregate 5 to 10 years' imprisonment; **(3)** on July 25, 2000, Appellant pled guilty to three counts of statutory sexual assault and one count of COM, in connection with Appellant's sexual assaults on A.H.; Appellant had sex with A.H. three times between September 1, 1999 and November 26, 1999; A.H. was

approximately 15 years old at the time; the court sentenced Appellant to an aggregate 5 to 10 years' imprisonment (concurrent with the sentence imposed relative to J.D.); **(4)** on July 25, 2000, Appellant pled guilty to one count each of aggravated indecent assault and COM, and three counts of indecent assault, in connection with Appellant's sexual assaults on M.V.; Appellant had sexual contact with M.V. twice between November 1, 1999 and January 28, 2000; M.V. was approximately 14 years old at the time; Appellant took M.V. for a ride to a secluded location and assaulted her in his car; the court sentenced Appellant to an aggregate 5 to 10 years' imprisonment (concurrent with the sentence imposed relative to J.D. and A.H.), plus 10 years' probation.

The Commonwealth argued evidence of Appellant's prior bad acts was strikingly similar to the current offenses, highly probative, and demonstrated a common plan, scheme or design. The Commonwealth emphasized that each of Appellant's victims was a young teenage girl, between the ages of 12 and 15 when the assaults began, who was an acquaintance or neighbor of Appellant. In each instance, Appellant found ways to be alone with his victims. The Commonwealth insisted Appellant's prior offenses were similar to the current offenses, in which Appellant sexually assaulted Victim over a dozen times when she was between 12 and 16 years old, in multiple parking lots, secluded locations, and in his or Victim's bathroom or bedroom. The Commonwealth maintained the proffered evidence showed a clear pattern of behavior. The Commonwealth contended its substantial need to present the

proffered evidence because Appellant assaulted Victim in private over a period of years, leading to a lack of forensic evidence. As well, the Commonwealth claimed the proffered evidence was necessary to rebut Appellant's theory that Victim fabricated the allegations. The Commonwealth further averred the court should exclude the time of Appellant's incarceration (from March 28, 2000 to December 4, 2006) when conducting a remoteness analysis.

On November 6, 2017, Appellant filed a motion *in limine* to admit evidence of "manipulation" and a "civil conspiracy to fabricate." Specifically, Appellant alleged, *inter alia*, he has two daughters who were sexually assaulted by William Beck. Appellant maintained the Commonwealth was currently prosecuting William Beck for those sexual assaults. Appellant claimed David Beck (William Beck's brother) dates or is best friends with Victim. Appellant insisted William Beck was arrested on or around June 8, 2016. Appellant emphasized that David Beck called police on or around June 22, 2016, to report the current sexual offenses by Appellant on Victim. Appellant sought to introduce evidence of various jailhouse recordings between William Beck and other members of the Beck family during June 2016, in which William Beck stated he would only get 5 to 10 years' imprisonment in connection with his sexual assaults on Appellant's daughters, if he could implicate Appellant in any type of criminal wrongdoing. Appellant contended the jailhouse recordings expressly discussed Victim and encouraged Victim to report Appellant's assaults. Appellant insisted the

proffered evidence showed a relationship between Victim and the Beck family and Victim was fabricating the allegations against Appellant in retaliation for Appellant's accusations that William Beck had sexually assaulted his daughters.

The court held a motion *in limine* hearing on November 7, 2017. On November 9, 2017, the court denied both motions. That day, the Commonwealth filed a motion for reconsideration. The court held a hearing on the Commonwealth's motion for reconsideration on November 13, 2017. At the conclusion of the hearing, the court permitted the Commonwealth to introduce evidence of Appellant's prior bad acts concerning **only** M.V. and A.H.

Appellant proceeded to a jury trial on November 14, 2017. On November 15, 2017, the jury convicted Appellant of one count each of rape, statutory sexual assault, IDSI with a person less than 16 years old, attempted IDSI with a person less than 16 years old, sexual assault, and COM, two counts of indecent assault, and sixteen counts of unlawful contact with a minor. The court sentenced Appellant on February 8, 2018, to an aggregate 175 to 350 years' imprisonment. Appellant timely filed post-sentence motions on Tuesday, February 20, 2018.[2] The court held a hearing on Appellant's post-sentence motions on May 11, 2018, and denied relief on June 22, 2018.

---

[2] February 18, 2018 was a Sunday and the court was closed on Monday, February 19, 2018 for Presidents' Day. **See** 1 Pa.C.S.A. § 1908 (explaining whenever last day of any filing period falls on Saturday or Sunday, or on any legal holiday, that day shall be omitted from computation).

Appellant timely filed a notice of appeal on July 18, 2018. On August 9, 2018, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on August 22, 2018.

Appellant raises two issues for our review:

> WHETHER THE TRIAL COURT ERRED IN PROHIBITING APPELLANT FROM INTRODUCING RELEVANT, RELIABLE, AND EXCULPATORY EVIDENCE IN THE FORM OF WILLIAM BECK'S JAILHOUSE RECORDINGS AT TRIAL?
>
> WHETHER THE TRIAL COURT ERRED IN GRANTING THE COMMONWEALTH'S MOTION FOR RECONSIDERATION, WHICH PERMITTED THE ADMISSION OF PRIOR BAD ACT EVIDENCE IN THE FORM OF APPELLANT'S PAST CRIMINAL CONVICTIONS FOR CONDUCT THAT WAS NOT SUFFICIENTLY SIMILAR TO THE CHARGES AT ISSUE, WHERE THE PRIOR BAD ACTS WERE ADMITTEDLY BEING USED TO SHOW PROPENSITY ON BEHALF OF APPELLANT AND BOLSTER THE TESTIMONY OF THE COMPLAINING WITNESS, AND WHERE THE PREJUDICIAL EFFECT OF THIS EVIDENCE GREATLY OUTWEIGHED ANY ARGUABLE PROBATIVE VALUE?

(Appellant's Brief at 11).

Our standard of review of a trial court's admission or exclusion of evidence is well established and very narrow:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

***Commonwealth v. Montalvo***, 604 Pa. 386, 403, 986 A.2d 84, 94 (2009),

*cert. denied*, 562 U.S. 857, 131 S.Ct. 127, 178 L.Ed.2d 77 (2010) (internal citations and quotation marks omitted). Our scope of review in cases where the trial court explains the basis for its evidentiary ruling is limited to an examination of the stated reason. ***Commonwealth v. Stephens***, 74 A.3d 1034, 1037 (Pa.Super. 2013). "We must also be mindful that a discretionary ruling cannot be overturned simply because a reviewing court disagrees with the trial court's conclusion." ***Commonwealth v. O'Brien***, 836 A.2d 966, 968 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

In his first issue, Appellant argues the jailhouse recordings demonstrated Victim's relationship with the Beck family and suggested Victim's motive to fabricate the allegations against Appellant. Appellant asserts the recordings were reliable, relevant, and exculpatory evidence because they showed Victim's bias against Appellant. Appellant claims the recordings are not hearsay because Appellant offered them only to show Victim's motive to lie, and not for the truth of the matter asserted. In any event, Appellant contends the recordings were admissible under the "statement against interest" hearsay exception. Appellant maintains the probative value of the recordings vastly outweighed its prejudicial effect. Appellant insists the recordings were the only way to prove Victim's motive to fabricate. Appellant highlights a remark from the notes of a Children and Youth Services ("CYS") caseworker expressing concern that Mary Beck was "filling [Victim's] head full of stuff in retaliation." Appellant contends the

caseworker's note supported his claim of a motive to fabricate. Appellant concludes the trial court's exclusion of the jailhouse recordings was improper, and this Court must reverse and remand for a new trial.[3] We disagree.

"The threshold inquiry with the admission of evidence is whether the evidence is relevant." *Commonwealth v. Stokes*, 78 A.3d 644, 654 (Pa.Super. 2013), *appeal denied*, 625 Pa. 636, 89 A.3d 661 (2014). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Id.* *See also* Pa.R.E. 401 (defining relevant evidence). Nevertheless, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. *See also Commonwealth v. Cook*, 544 Pa. 361, 676 A.2d 639 (1996), *cert. denied*, 519 U.S. 1119, 117 S.Ct. 967, 136 L.Ed.2d 851 (1997) (holding trial court properly excluded defendant's proffered testimony from four witnesses, that victim owed money to his drug supplier, to support defense theory that Appellant did not commit crimes at

---

[3] To the extent Appellant raises a due process argument on appeal, that particular claim is waived for failure to specify it in his Rule 1925(b) statement. *See Commonwealth v. Hansley*, 24 A.3d 410 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (explaining vague concise statement is functional equivalent of no statement at all; failure to specify claim of error in concise statement constitutes waiver on appeal).

issue; proffered evidence was merely speculative and had little to no probative value).

Instantly, the trial court addressed this issue as follows:

[Appellant] sought to introduce jailhouse recordings of William Beck and [Mr.] Beck's family. The recordings clearly indicate William Beck's hatred of [Appellant] and [Mr.] Beck's willful desire to…provide testimony against [Appellant]. There is nothing in the records demonstrating a plan to have [V]ictim in this case fabricate allegations or testimony. The [c]ourt determined that this speculative evidence must be excluded because its probative value was significantly outweighed by its likelihood to confuse the issues and mislead the jury.

(Opinion in Support of Denial of Post-Sentence Motions, filed June 22, 2018, at 1-2). We see no reason to disrupt the court's analysis. **See Montalvo, supra**; **Stephens, supra**; **O'Brien, supra**.

The record shows Victim was not a party to any of the proffered jailhouse recordings. Additionally, the recordings did not indicate a plan for Victim to fabricate allegations. To the contrary, the recordings demonstrated only that Victim disclosed Appellant's sexual abuse to a member of the Beck family. The fact that William Beck believed he might receive a more lenient sentence in his own case for providing information about Appellant's abuse of Victim did not mean Victim fabricated the abuse. Consequently, the recordings were not exculpatory, and the trial court properly excluded them as speculative, confusing, and not probative. **See** Pa.R.E. 403; **Cook, supra**.

Moreover, the jury heard testimony regarding Victim's friendship/relationship with David Beck, William Beck's pending charges for

- 11 -

sexually assaulting Appellant's daughters, CYS' warning to Victim's mother to keep Victim away from David Beck, and David Beck's initial report to police of Appellant's sexual assaults on Victim. Thus, the jury heard other evidence to support Appellant's theory of fabrication but rejected that theory. Therefore, Appellant's first issue merits no relief.[4]

In his second issue, Appellant argues the Commonwealth's proffered evidence of prior bad acts was not substantially similar to the crimes charged in the current case. Appellant emphasizes Victim's allegations of anal sex at various locations, which Appellant insists are wholly different from the allegations of A.H. and M.V. Appellant contends his convictions involving A.H. and M.V. are almost 20 years old. Appellant stresses the probative value of the prior bad acts evidence was outweighed by unfair prejudice. Appellant claims the Commonwealth's position that the prior bad acts evidence was particularly important to rebut Appellant's theory of fabrication was baseless, because the court had already precluded the jailhouse recordings. Appellant concludes the admission of evidence of Appellant's prior bad acts was improper, and this Court must reverse and remand for a new trial.[5] We

---

[4] Due to our disposition, we do not have to decide whether the recordings met any hearsay exception.

[5] Appellant also argues the Commonwealth conceded in its motion for reconsideration that it sought to introduce evidence of Appellant's prior bad acts to show Appellant's propensity to commit crimes. When read in its entirety, however, the motion for reconsideration plainly sought to introduce evidence of prior bad acts to demonstrate a common plan or scheme.

- 12 -

disagree.

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404.  Character Evidence; Crimes or Other Acts**

\*     \*     \*

**(b)   Crimes, Wrongs or Other Acts.**

*(1)    Prohibited Uses.*   Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2)    Permitted Uses.*   This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

\*     \*     \*

Pa.R.E. 404(b)(1)-(2).  "[E]vidence of prior crimes is not admissible for the **sole** purpose of demonstrating a criminal defendant's propensity to commit crimes."  ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa.Super. 2004) (*en banc*) (emphasis added).  Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character."  ***Id.***  Specifically, evidence of other crimes or bad acts is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident.  ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501 (2005), *cert. denied*, 549 U.S. 848,

127 S.Ct. 101, 166 L.Ed.2d 82 (2006).  When offered for a legitimate purpose, evidence of prior crimes or bad acts is admissible if its probative value outweighs its potential for unfair prejudice.  **Commonwealth v. Hairston**, 624 Pa. 143, 84 A.3d 657 (2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014).

This Court has explained:

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator.  Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator.  Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative.  If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive.  Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact.  To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

**Commonwealth v. Tyson**, 119 A.3d 353, 358-59 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 787, 128 A.3d 220 (2015) (quoting **Commonwealth v. G.D.M., Sr.**, 926 A.2d 984, 987 (Pa.Super. 2007), *appeal*

*denied*, 596 Pa. 715, 944 A.2d 756 (2008)). *See also Commonwealth v. Weakley*, 972 A.2d 1182 (Pa.Super. 2009), *appeal denied*, 604 Pa. 696, 986 A.2d 150 (2009) (explaining that, in comparing methods and circumstances of separate crimes, court must necessarily look for similarities including: (1) manner in which crimes were committed; (2) weapons used; (3) ostensible purpose of crime; (4) location; and (5) type of victims). "The common scheme exception does not require that the two scenarios be identical in **every** respect." *Tyson, supra* at 360 n.3 (emphasis in original).

Further, although "remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." *Id.* at 359 (quoting *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa.Super. 2010), *appeal denied*, 607 Pa. 694, 4 A.3d 157 (2010)). Significantly, time spent incarcerated is excluded from the calculation of elapsed time between crimes. *See Commonwealth v. Rush*, 538 Pa. 104, 646 A.2d 557 (1994) (excluding defendant's period of incarceration for remoteness analysis); *O'Brien, supra* (holding defendant's prior convictions from 1985 for similar sexual offenses were not too remote in time from current January 1996 offenses where defendant was incarcerated for prior offenses until April 1990; relevant timeframe for remoteness analysis was less than six years).

Evidence of relevant prior crimes or bad acts is admissible "if the

probative value of the evidence outweighs its potential for unfair prejudice."

***Commonwealth v. Kinard***, 95 A.3d 279, 284 (Pa.Super. 2014) (*en banc*).

"'Unfair prejudice' means a tendency to suggest decision on an improper basis

or to divert the jury's attention away from its duty of weighing the evidence

impartially." ***Commonwealth v. Dillon***, 592 Pa. 351, 366, 925 A.2d 131,

141 (2007) (quoting Pa.R.E. 403, *Comment*).

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial.

***Tyson, supra*** at 360 (quoting ***Dillon, supra*** at 367, 925 A.2d at 141). Where

the Commonwealth seeks to introduce evidence of prior bad acts or other

crimes in a case based largely upon circumstantial evidence, admission of that

evidence is particularly important. ***Weakley, supra*** at 1191. Likewise, the

Commonwealth's need to present prior bad acts evidence under the common

plan exception is greater where the victim's credibility is undermined at trial.

***See Commonwealth v. Luktisch***, 680 A.2d 877 (Pa.Super. 1996) (holding

Commonwealth's need to present prior bad acts testimony was increased after

victim's credibility was "crippled" at trial; at that point, prior bad act testimony

became more probative than prejudicial).

    "Additionally, when examining the potential for undue prejudice, a

cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence. … Jurors are presumed to follow the trial court's instructions." **Hairston, supra** at 160, 84 A.3d at 666 (holding extraneous offense of arson was admissible under Rule 404(b) as *res gestae* evidence in prosecution for murder; trial court's instruction on how arson evidence should be considered minimized likelihood that arson evidence would inflame jury or cause it to convict defendant on improper basis).

Instantly, the Commonwealth charged Appellant with 158 counts of various sex offenses in relation to numerous sexual assaults Appellant committed on Victim between January 1, 2007 and June 30, 2016, beginning when Victim was 12 years old. These incidents took place in Victim's home, Appellant's home, Appellant's truck, a hotel room, and in the woods. Before each incident, Appellant isolated Victim in a private area and/or lured her under false pretenses to take a ride in his car.

The court admitted prior bad acts evidence concerning Appellant's prior sexual assaults on M.V. and A.H., and the record reveals the following factual similarities between the current offenses and those prior acts. In each case, the victim of Appellant's actions was an acquaintance or "friend" of Appellant. Each victim was a young, teenage girl between the ages of 12 and 15 when the abuse began. In each case, Appellant found ways to isolate his victim. Appellant's "weapon" in each case was his mind and body, which he used to manipulate, prey on, and sexually assault the victims. The ostensible purpose

of Appellant's acts was sexual gratification. Thus, the nature of the victims, the manner Appellant used to commit those acts, the "weapons" used to commit those acts, and the ostensible purpose of the acts are nearly identical to the present case. *See Tyson, supra*; *Weakley, supra*. Thus, the Commonwealth's proposed evidence was relevant to demonstrate a common plan or scheme under Rule 404. *See* Pa.R.E. 404(b)(2); *Tyson, supra*; *G.D.M., Sr., supra*.

Additionally, the prior bad acts evidence was not too remote to negate its probative value. Appellant sexually assaulted A.H. three times between September 1, 1999 and November 26, 1999, and sexually assaulted M.V. twice between November 1, 1999 and January 28, 2000. Appellant's assaults on Victim occurred between January 1, 2007 and June 30, 2016. Importantly, the record shows Appellant was in prison from approximately March 28, 2000 to December 4, 2006. Appellant's assaults against Victim began within a month of Appellant's release from prison. Excluding Appellant's period of incarceration from the "look back" calculation, less than one year elapsed between Appellant's assaults on A.H. and M.V., and Appellant's assaults on Victim. Any lapse in time is certainly not "excessive" under these circumstances. *See Tyson, supra*; *O'Brien, supra*.

Further, the probative value of the evidence of Appellant's prior bad acts outweighed its potential for unfair prejudice. Appellant's prior bad acts should not be shielded from the factfinder merely because they are harmful to

Appellant; the question is whether evidence of his prior bad acts would be **unfairly** prejudicial. *See Dillon, supra*; *Tyson, supra*. Evidence of Appellant's prior bad acts was particularly important in this case because the Commonwealth's evidence relied largely on Victim's testimony, which Appellant ferociously attacked at trial. The Commonwealth lacked forensic evidence to corroborate Victim's testimony. Appellant testified in his defense and flatly denied all allegations, essentially leaving the jurors with a "he said/she said" scenario. *See Weakley, supra*. As well, Appellant explored the relationship between Victim and the Beck family at length at trial in an effort to undermine Victim's credibility and demonstrate her motive to fabricate her allegations. *See Luktisch, supra*.

Moreover, the court issued a cautionary instruction to the jury regarding the limited purpose of the evidence and clarified that the jury could not treat the prior bad acts as proof of Appellant's bad character or criminal tendencies. *See Hairston, supra*. We can presume the jurors followed the trial court's instructions. *See id.* Under these circumstances, Appellant's second issue merits no relief. We see no basis to call the verdict into question. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2019